13421

DeVORE v. BARSTOW & COMPANY

(164 S. E., 842)

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.,* for appellants,

*Messrs. Elliott, McLain, Wardlaw & Elliott,* for respondents,

June 2, 1932.

The opinion of the Court was delivered by Mr. Justice Stabler.

The facts out of which this action arose, briefly stated, are these: In August, 1927, W. S. Barstow & Co., Inc., hereinafter referred to as Barstow, contracted, for a specified consideration, with Lexington Water Power Company, hereinafter referred to as the power company, to build a large dam across Saluda River, and to cut all trees and clear all growth within the area to be flooded. Thereafter, on February 4, 1928, J. E. Triplette Lumber Company, hereinafter referred to as Tripplette, contracted with Barstow to cut and remove all timber and to cut and burn all brush within a portion of the area covered by Barstow's agreement with the power company. Under the terms of the contract, Triplette was to pay Barstow stipulated prices per thousand feet for all lumber cut and removed on the south side of the Saluda River, between Amick's Ferry and Lexington Baptist Church, and Barstow was to pay Triplette $20.00 per acre for all land cleared of brush. On January 8, 1929, the plaintiffs contracted with Triplette, for a consideration of $17.50 per acre, to clear and burn the brush on a portion of the land, about 500 acres, covered by Tripplette's contract with Barstow, situated between Amick's Ferry and Lexington Baptist Church, the work to be commenced or or before May 15, 1929, and completed on or before March 1, 1930; either party to the contract had the right, upon ten days' notice to the other in writing, to cancel the agreement.

Plaintiffs brought this action against Barstow and the power company for damages alleged to have been caused by their action in closing the gates of the Dreher Shoals Dam, in September and October, 1929. The complaint alleges: "That by reason thereof the waters backed up on the prop-

erties which these plaintiffs were clearing, washing away the brush which had been cleared and stacked, requiring the brush to be recollected, restacked and redried, before burning, sobbing and soaking the land, the brush and underbrush in such a way as to seriously interfere with the clearing operations, flooding the low places in and around this property, so that access to the property being cleared was rendered difficult and expensive, seriously injuring and damaging the plaintiffs in their operations, in violation of their rights under the contracts referred to above."

The defendant Barstow by answer admitted having entered into a contract with Triplette to clear the lands mentioned in the complaint, but alleged that he had nothing whatsoever to do with the closing of the gates of the dam or the retention of the water therein, and that there was no privity of contract between the plaintiffs and the defendant. The power company by answer admitted having closed the gates, but, *inter alia,* alleged that there was no privity of contract between it and the plaintiffs. Both defendants set up as a further defense that, in an action by Barstow against the Southern Surety Company and Triplette, in March, 1931, the identical issues, subject-matter and causes of action set forth in the complaint were tried and a judgment rendered on the merits of the case, and that such judgment, from which no appeal was taken, was a final adjudication of the matter.

On trial of the case in the Richland County Court, the defendants made a motion for a nonsuit upon the following grounds:

"1. That the plaintiff has failed to make out a case against the defendants in that they have shown no privity of contract between the plaintiffs and defendants.

"2. That the contract under which plaintiffs sue is between the defendant, W. S. Barstow & Company, Inc., and The Triplette Lumber Company, and plaintiffs have failed to show that the Triplette Lumber Company was not paid

in full under the contract, or that any notice of an assignment to the plaintiffs of the contract or funds due thereunder were given to the defendant, W. S. Barstow & Co., Inc., prior to such payments to the Triplette Lumber Company, and have, therefore, failed to establish any claim to any proceeds under the contract.

"3. On the ground that plaintiffs admitted under oath in a tort action that he had been paid by J. E. Triplette under their contract with him including an extra bonus for inconvenience and expense incurred by them through damages due to floods and they cannot have double satisfaction from these defendants.

"4. The defendants move for a nonsuit on the further ground that plaintiffs have totally failed to show any act of negligence on the part of the defendant or that any damage plaintiffs may have sustained was caused in whole or in part by any negligence on the part of the defendants, or that any acts of the defendants was the direct and proximate cause of the injury."

The Court granted the motion, and plaintiffs appeal.

Upon careful consideration, we think the trial Judge was correct in ordering the nonsuit. The respondents say that "what plaintiffs are attempting to do is to put themselves in the place of the Triplettes and establish damages which the Triplettes might possibly be entitled to by privity of their contract with defendants," and that, in order to do this, plaintiffs must show that their relation to Barstow amounted to such as would substitute them in the place and stead of Triplette, and to the exclusion of Triplette, in the Triplette-Barstow contract, so far as the lands which they contracted with Triplette to clear are concerned, and that they failed to show any such privity between themselves and the defendants or notice to the defendants of such relation, so as to establish a duty or obligation on the part of the defendants. To this contention the appellants reply that privity of contract is not necessary in this case to establish a duty on the

part of the defendant toward the plaintiffs, the wrongful act complained of being a tortious trespass, namely, defendants' interference with their clearing operations, and that in order to sustain a recovery, it was only necessary for them to show rightful possession of the property, a wrongful interference by defendants with this possession, and damages.

It must be conceded that the plaintiffs' possession, if any, of the lands in question, arose by reason of contract; and the question whether there was a privity of contract between plaintiffs and defendants and the nature of plaintiffs' possession is to be determined by an examination of the several contracts themselves. As we have already indicated, the contract between Barstow and the power company designated the former as the general contractor on the Saluda River project owned by the latter. Barstow, under the terms of the contract, was in entire charge of the construction, and was specifically authorized to sublet portions of the work in order that the power project might be completed by September 1, 1930. Under the terms of the contract between Triplette and Barstow, Triplette was bound to cut and to pay for at stipulated prices all the timber on certain lands, and to clear, at $20 per acre, all the land designated in the contract, which was irrevocable, and to have the lands cleared and ready to be flooded on or before March 1, 1930; a surety bond being given by Triplette for the faithful performance of the work. This contract, as is seen, was bilateral in respect to the payments thereunder. The contract of the plaintiffs with Tripplette was different, in that, while they agreed to clear and burn the brush, by March 1, 1930, on about 500 acres of land covered by the Triplette-Barstow contract, they were to be paid $17.50 per acre instead of $20, and the right was reserved to either party to cancel the contract upon ten days' notice in writing to the other. In addition, no surety bond was required, and the contract, as shown, was not bilateral in respect to payment. In view of

these variances between the contracts, we do not think it can be successfully contended that the agreement between the plaintiffs and Triplette amounted to an assignment by Triplette to them, to any extent whatever, of the Triplette-Barstow contract; and there is no evidence that there was any consent to the De Vore-Triplette contract on the part of Barstow, or that the defendants had any notice of any such contract or of any rights accruing to plaintiffs through Triplette, or that the defendants had any reason to conclude that there had been any subletting by Triplette to the plaintiffs of any of the lands contracted by Triplette with Barstow to be cleared. Certainly, it cannot be said that the mere fact that Barstow recommended the plaintiffs to Triplette to do clearing work, or that his agent checked up the work every two weeks, is evidence that Barstow knew the nature of the relations existing between plaintiffs and Triplette in the doing of such work.

It seems that Barstow was liable to Triplette, if to any one, as he had contracted with Triplette for the clearing of the land, and as his every act of every kind with respect thereto was with Triplette and not with the plaintiffs, with whom Barstow had no contractual relations, and whose claim to contractual rights and/or possession of the land through agreement between them and Triplette was unknown to him. It would seem, therefore, that possession of the property by plaintiffs, in the circumstances of the case, did not rest upon such a privity or relation of any kind between them and Barstow as would create a duty or obligation on the part of the defendants, and was not such possession as would support an action for trespass for interference therewith.

The order appealed from is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.